ams

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 05-40032-03-JAR |
| ) | |
| **MARIO HIGUERA-VALENZUELA,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM AND ORDER DENYING MOTION TO SUPPRESS

This matter is before the Court on defendant Mario Higuera-Valenzuela's (hereinafter "Higuera") Motion to Suppress (Doc. 78). On August 29, 2005, the Court held an evidentiary hearing and took the motion under advisement. Having reviewed the evidence and arguments presented by the parties, the Court is now prepared to rule. Because the Court finds that there was at least reasonable suspicion of a traffic infraction to justify the initial stop and because the Court finds that the statements provided were knowing and voluntary, the Court denies defendant Higuera's motion as described more fully below.

**I. Background**

At about 2:30 a.m. on March 7, 2005, Officer Chris Tedder of the Kiowa County, Kansas Sheriff's Department noticed a black Ford pickup truck with a Mississippi tag, a black Chevrolet Impala with an Arizona tag, and a silver Pontiac Grand-Am with a New Mexico tag traveling eastbound on Highway 54 toward Greensburg, Kansas. He noticed all three vehicles pull into a Best

Western motel off the highway. Soon after, Officer Tedder noticed the Grand-Am pull out of the motel parking lot and turn onto the highway, but no longer saw the other two vehicles. Officer Tedder pulled over the Grand-Am and asked for the driver and passengers' identification. The driver informed Officer Tedder that they were driving to Ohio. Officer Tedder believed the Grand-Am to be a "decoy" vehicle for the truck, which Officer Tedder discovered was still in the motel parking lot near the black Impala. After watching the parked cars for some time, Officer Tedder returned to his office just before 7 a.m. on March 7. He asked Officer Zane Huffman to watch the vehicles because he suspected that they were involved in drug trafficking based on the above-described facts.

Later, Officer Huffman called Officer Tedder and informed him that the truck and Impala were attempting to leave the motel. Officer Huffman observed the vehicles traveling approximately 4-6 feet apart from one another and then turning onto eastbound Highway 54. Officer Tedder decided to leave the office and head toward Highway 54, eventually pulling out from a southbound road behind the two vehicles. Just outside of Greensburg, Highway 54 changes from a four-lane road to a two-lane road. Officer Tedder pulled over the truck for failing to signal when it moved from the outside to the inside lane.

About one to one and one half miles later, Officer Huffman observed the Impala fail to move over to the right lane, despite a state sign ordering all vehicles to move into the right lane. Officer Huffman pulled over defendant Higuera, who was driving the black Impala, about 400-500 yards from the sign. Wendy Medina-Felix (hereinafter "Medina") was a passenger in the Impala. Higuera gave Officer Huffman a Mexico driver's license but was unable to provide proof of insurance. Officer Huffman placed Higuera under arrest for failure to obey a traffic sign and failure to provide proof of

insurance. He then conducted an inventory search of the vehicle and found a few personal belongings. Later, a search warrant was executed and officers found a small bag of marijuana that Officer Huffman characterized as intended for personal use.

Officer Huffman informed Higuera of his *Miranda* rights, and then asked Higuera questions. Higuera does not speak English, but Medina translated on behalf of Higuera and Officer Huffman. Higuera and Medina both denied to Officer Huffman that they were traveling with the truck.

## II. Discussion

Defendant Higuera argues that this Court should suppress evidence discovered during the search of the Impala, as well as the statements he made after he was arrested. Specifically, defendant Higuera argues: (1) that the initial stop was invalid; (2) Officer Huffman lacked probable cause to arrest Higuera; (3) any statements made by Higuera were involuntary and not made in accordance with *Miranda v. Arizona*; and (4) any evidence or statement that resulted from the traffic stop or interrogation should be suppressed as fruit of an illegal search.

### A. *Initial Stop*

"'A traffic stop is a "seizure" within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention quite brief.'"[1] The principles of *Terry v. Ohio*[2] apply to such traffic stops. The reasonableness of a stop depends on "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which

---

[1] *United States v. Holt*, 264 F.3d 1215, 1220 (10th Cir. 2001) (en banc) (quoting *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998) (further quotation omitted)).

[2] 392 U.S. 1 (1968).

justified the interference in the first place."[3]  Tenth Circuit cases establish that "a detaining officer must have an objectively reasonable articulable suspicion that a traffic violation has occurred or is occurring before stopping [an] automobile."[4]  Specifically, the stop is valid if "the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring."[5]

Here, Officer Huffman based the traffic stop on an observed traffic infraction.  He witnessed Higuera fail to abide by a traffic sign mandating that he move into the right lane and and then pulled him over 400-500 yards later.  Under Kansas law, "[t]he driver of any vehicle shall obey the instructions of any official traffic-control device applicable thereto, placed in accordance with the provisions of this act, unless otherwise directed by a police officer."[6]  Because Officer Huffman observed defendant Higuera violate this traffic law, the stop is valid.

The Court briefly notes that defendant Higuera's assertion that his stop was pretextual is without merit.  Higuera argues "Officer Huffman's claim of observing a traffic infraction was an improper pretext for conducting an investigation for which he lacked probable cause or reasonable

---

[3]*Id*. at 19-20.

[4]*United States v. Cervine*, 347 F.3d 865, 869 (10th Cir. 2003); *United States v. Soto*, 988 F.2d 1548, 1554 (10th Cir. 1993).

[5]*United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995), *cert. denied*, 518 U.S. 1007 (1996).

[6]K.S.A. § 8-1507.  "'Official traffic-control devices' means all signs, signals, markings, and devices, not inconsistent with this act, placed or erected by authority of a public body or official having jurisdiction for the purpose of regulating, warning, or guiding traffic."  K.S.A. § 8-1442.  Although the Court granted judicial notice of K.S.A. § 8-1508 at the evidentiary hearing, it appears that section 8-1507 is actually more applicable to the facts of this traffic stop.  Section 8-1508 deals with traffic control signals that exhibit different colored lights.

grounds." An officer's subjective motives are irrelevant when conducting a traffic stop.[7] The idea that the stop was pretextual holds no legal significance because pretextual stops are legal when a traffic violation has occurred.[8] As the Court has discussed, Officer Huffman observed a traffic violation; thus, the traffic stop was legal.

### B. Arrest

Even if the initial stop of defendant's vehicle was legitimate, the detention must be "reasonably related in scope to the circumstances which justified the interference in the first place," as required under Terry v. Ohio.[9] "Generally, an investigative detention must 'last no longer than is necessary to effectuate the purpose of the stop.'"[10] It must be temporary, and its scope must be carefully tailored to its underlying justification.[11] "Under ordinary circumstances, this limits the officer to a request for the driver's license and registration, a computer check on the car and driver, an inquiry about the driver's travel plans, and the issuance of a citation."[12] Upon issuing the citation or warning and determining the validity of the driver's license and right to operate the vehicle, the officer usually must allow the driver to

---

[7] *Botero-Ospina*, 71 F.3d at 787.

[8] Pretextual stops have long been held legal since the seminal decision of *Whren v. United States*, 517 U.S. 806 (1996).

[9] *Id.*

[10] *United States v. Patten*, 183 F.3d 1190, 1193 (10th Cir. 1999) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)).

[11] *United States v. Gutierrez-Daniez*, 131 F.3d 939, 942 (10th Cir. 1997), *cert. denied,* 523 U.S. 1035 (1998); *United States v. Wood,* 106 F.3d 942, 945 (10th Cir. 1997).

[12] *United States v. Cervine*, 347 F.3d 865, 871 (10th Cir. 2003).

proceed without further delay or additional questioning.[13]

Here, Officer Huffman immediately requested the vehicle's registration, proof of insurance, and Higuera's driver's license. Defendant Higuera was unable to produce proof of insurance, prompting his arrest. A custodial arrest made without a warrant requires probable cause.[14] "Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."[15] At the time of Higuera's arrest, Officer Huffman had observed him commit a traffic offense and had additionally discovered that the car Higuera was driving had no proof of insurance.[16] On these grounds alone, the Court finds that Officer Huffman had probable cause to arrest Higuera.[17]

### C. Higuera's Statements

---

[13]*United States v. Zubia-Melendez*, 263 F.3d 1155, 1161 (10th Cir. 2001); *Patten*, 183 F.3d at 1193.

[14]*United States v. Morris*, 247 F.3d 1080, 1088 (10th Cir. 2001).

[15]*United States v. Soto*, 375 F.3d 1219, 1222 (10th Cir. 2004).

[16]The government urges the Court to also attribute to Officer Huffman knowledge of certain facts uncovered by officers in Guymon County, Oklahoma the previous night. The government states that the law allows the Court to consider the "collective knowledge" of law enforcement officers to determine whether they took appropriate action. The government, however, ignores the key fact that Officer Tedder testified that he had no knowledge of the events that occurred the night before until two days after he stopped the pickup truck. Certainly, there is no evidence in the record that Officer Huffman was aware of these facts. The cases cited by the government are distinguishable on these grounds. *See United States v. Morgan*, 936 F.2d 1561 (10th Cir. 1991) (explaining that information *communicated* to the arresting officer could be attributed to him when determining probable cause), *cert. denied*, 502 U.S. 1102 (1992); *Karr v. Smith*, 774 F.2d 1029, 1032 (10th Cir. 1985) (explaining that an officer may rely on information *received* from another).

[17]The Court will not proceed to determine the validity of the search, as defendant Higuera does not contest the validity of the later search warrant that was executed on the Impala. Only after executing the search warrant was the marijuana discovered. Defendant Higuera argues that no consent was provided to search the vehicle. Nevertheless, consent is not necessary if the officers executed the search pursuant to a valid search warrant.

Defendant Higuera contends that any statement he made after his arrest should be suppressed because they were involuntary and not made pursuant to a knowing and intentional waiver of his rights under the United States Constitution and *Miranda*. In order to waive one's Fifth Amendment privilege against self-incrimination, the individual must knowingly and intelligently waive the constitutional privilege.[18] This standard for a valid waiver includes two prongs:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal [sic] both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.[19]

Officer Huffman testified that he read defendant Higuera his rights under *Miranda* after the arrest and before questioning. There is no evidence in the record that suggests Higuera was coerced, or intimidated. There is likewise no evidence that he was unaware of the rights he abandoned by speaking with Officer Huffman. Nor does Higuera contend that he did not understand Officer Huffman's statements and questions as translated by Medina.

Even when a defendant's *Miranda* rights are not violated, the court must still conduct a Fifth Amendment inquiry into the voluntariness of any statement.[20] The court looks to the totality of the

---

[18]*E.g.*, *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *United States v. Curtis*, 344 F.3d 1057, 1066 (10th Cir. 2003).

[19]*Curtis*, 344 F.3d at 1066 (quoting *Colorado v. Spring*, 479 U.S. 564, 573 (1987)).

[20]*United States v. Roman-Zarate*, 115 F.3d 778, 783 (10th Cir. 1997).

circumstances in determining whether the statements were voluntary.[21] In considering whether a statement is of free will, the courts look to several factors, including: "(1) the characteristics of the defendant: age, education, intelligence, and physical and emotional attributes; (2) the circumstances surrounding the statement, including the length of detention and questioning and the location of questioning; and (3) the tactics, if any, employed by officers. . . .

In no case, however, is any single factor determinative."[22] A confession "must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence."[23] Coercive police activity is a necessary predicate to a finding that a confession is not voluntarily within the meaning of the due process clause.[24]

Defendant is unable to articulate exactly why Higuera's statements were involuntary.[25] There is no evidence in the record of personal characteristics that would make defendant Higuera vulnerable to police coercion. Likewise, there is no evidence that the circumstances of the questioning or the tactics used by officers amounted to coercion. There is no evidence in the record of any threat or coercion employed by Officer Huffman, nor any implied promises or improper influence. Therefore, the Court declines to suppress the statements made by Higuera after his arrest. Because the Court finds that the initial stop, and arrest were valid, as well as Higuera's later statements, it is not necessary to analyze

---

[21]*United States v. Glover*, 104 F.3d 1570, 1579 (10th Cir. 1997).

[22]*United States v. Chalan*, 812 F.2d 1302, 1307 (10th Cir. 1987), *cert. denied*, 488 U.S. 983 (1988).

[23]*Malloy v. Hogan*, 378 U.S. 1, 7 (1964).

[24]*See United States v. Erving L.*, 147 F.3d 1240, 1249 (10th Cir. 1998).

[25]There is no evidence in the record that Higuera "confessed" to anything when he was questioned after the arrest. In fact, the only statement attributed to him in the record is that he was not traveling with the pickup truck.

8

whether any "fruit of the poisonous tree" need be suppressed.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant Higuera's Motion to Suppress (Doc. 78) is **denied**.

IT IS SO ORDERED.

Dated this  11th  day of October 2005.


    S/ Julie A. Robinson

**Julie A. Robinson**
**United States District Judge**